DELNAY v. WOODRUFF.

1. HUSBAND AND WIFE—ESTATES BY ENTIRETIES—REVOKING TESTAMENTARY DISPOSITION OF PROPERTY BY DEED—QUIETING TITLE.
    An ineffectual attempt by husband and wife to make testamentary disposition of their properties by deeding to third parties and taking back deed to themselves and heirs of each of them is subject to revocation, and, when revoked, and decree entered in their favor in a suit to quiet title, they are again vested with the title in fee as tenants by the entireties.

As to meaning of term "reasonable doubt" as applied to marketability of title to real property, see annotation in 38 L. R. A. (N. S.) 8.

2. PARTIES—UNKNOWN DEFENDANTS—STATUTES—JURISDICTION.

Where, in a suit by husband and wife to quiet title as against their heirs, there was personal service on all defendants but two, whose existence was uncertain, and as to them and their "unknown heirs, devisees, legatees and assigns," the provisions of 3 Comp. Laws 1915, § 12371, relating to unknown defendants, were fully complied with, the court below had jurisdiction of the parties and the decree quieting title in plaintiffs is final.

3. SAME—LIMITATION OF ACTIONS—NOTICE.

Where more than three years have elapsed since entry of decree quieting title, under 3 Comp. Laws 1915, § 12376, the matter may not be reopened for any of the defendants, even though they did not have actual notice.

4. SAME—APPLICABILITY OF STATUTE.

Where, in a suit to quiet title, none of the defendants were persons whose names appeared "of record in some public office in connection therewith," the provisions of 3 Comp. Laws 1915, § 12373, prohibiting unknown heirs being made parties defendant until 15 years have elapsed since recording such title, do not apply.

5. VENDOR AND PURCHASER—MARKETABLE TITLE—EVIDENCE.

As bearing upon the question of vendor's having a marketable title, the fact that various financial institutions have refused to make a mortgage loan on the property because of the condition of the title, while worthy of consideration, is not conclusive, since said objection should have some reasonable foundation in fact, and that the title is subject to some captious doubt, or the remote and improbable possibility of litigation, is not enough.

6. SAME—OPINION OF COUNSEL NOT CONCLUSIVE.

Even the opinion of counsel that a title is bad is not sufficient, if in fact erroneous, to raise such a doubt as will render a title unmarketable.

7. SAME—WHAT CONSTITUTES MARKETABLE TITLE.

A marketable title is one which is free from incumbrance, and which is of a character to assure the vendee the quiet and peaceable enjoyment of the property.

Appeal from Kent; Brown (William B.), J. Submitted April 12, 1928. (Docket No. 118, Calendar No. 33,694.) Decided October 24, 1928.

Bill by Bruinis Delnay, Jr., and another against Rose Woodruff to enjoin the forfeiture of a land contract, to determine the title to land, and for an accounting. Defendant filed a cross-bill to foreclose the land contract. From a decree for plaintiffs, defendant appeals. Reversed, and decree entered for defendant.

*Taggart & Kingston,* for plaintiffs.

*Fred P. Geib,* for defendant.

NORTH, J. The plaintiffs herein are the vendees in a land contract from Adelbert F. Starkweather and Rose M. Starkweather, the latter being now Mrs. Rose Woodruff by reason of her remarriage since Mr. Starkweather's death in 1924; and she is made the defendant in this case. The contract above referred to was dated May 12, 1923, and covered lot No. 48 of T. Stewart White's addition of the city of Grand Rapids, Michigan, excepting the south 11.72 feet thereof. Under the terms of this contract the plaintiffs were entitled to receive from the vendors ''a good and sufficient warranty deed'' and a conveyance of the premises free and clear of incumbrances except such as accrued through the acts or defaults of the vendees. The original purchase price was $5,500, and when this was substantially half paid the vendees sought to secure a mortgage loan to enable them to pay the balance of the contract price. In attempting to secure the loan in 1926, they learned for the first time that the title of the vendors was questioned. The vendees ceased making payments on their contract and in consequence thereof were served with a notice of forfeiture. They thereupon filed the bill of complaint herein for the purpose of determining whether the

defendant is possessed of a merchantable title to the premises, and if not, an accounting is sought incident to which they ask that the defendant be decreed to pay them such an amount as may be justly due them, and they seek a lien on the premises therefor. A temporary injunction was issued restraining the defendant from instituting proceedings to carry the forfeiture of the contract into effect pending the further order of the court herein. The defendant filed an answer in which she alleges her ability and willingness to give such a deed of the premises as is required by her contract as soon as the payment of the purchase price is completed, and in a cross-bill filed she seeks to foreclose the land contract. The controlling question presented is whether the defendant is possessed of a merchantable title to this property. The circuit judge before whom the case was heard found that she was not possessed of such a title, and the defendant has appealed from the decree entered in favor of the plaintiffs.

The alleged defects in the title to this property arise from the following circumstances: Previous to their marriage to each other, Mrs. Starkweather had been married once and Mr. Starkweather had been married twice. Mrs. Starkweather had two daughters by her former marriage, one of whom, Mrs. Gladys Cheney, was living at the time this controversy arose, but the other had died and was survived by her daughter, Dorothy Chandler. Mr. Starkweather had two children by his first marriage, Florence and Ernest Starkweather, and two by his second marriage, Carlton Starkweather and Hazel Starkweather-Atwood. No children were born of his marriage to the defendant. At the time of the marriage of the defendant herein and Mr. Starkweather each was possessed of some real property.

They desired to arrange the title to their property so that they and the survivor would have the full use and enjoyment of it, and so that upon the death of the survivor one-half of their property would go to the heirs of Mr. Starkweather and one-half to the heirs of Mrs. Starkweather. To accomplish this, they deeded their respective properties to Edgar O. Pinkerton on March 24, 1910. On the same day Pinkerton and his wife executed an instrument, hereinafter referred to as the Pinkerton deed, covering this property, which in part reads as follows:

"This indenture, made this 24th day of March, A. D. 1910, between Edgar O. Pinkerton and Etta Pinkerton of the city of Grand Rapids, Michigan, parties of the first part and Adelbert F. Starkweather and Rosie M. Starkweather, husband and wife, jointly and with full right of survivorship during each of their respective lives and in case of the death of the survivor of either of them, the said property shall then be divided as follows: One-half interest in said property to go to the heirs of Rosie M. Starkweather and one-half interest to the heirs of said Adelbert F. Starkweather of Grand Rapids, Michigan, parties of the second part: Witnesseth, that the said parties of the first part for and in consideration of the sum of one dollar ($1) * * * do by these presents grant, bargain, sell, remise, release, alien and confirm unto the said party of the second part and his heirs and assigns forever," etc.

The deed to Mr. Pinkerton and that given back by him and his wife were duly recorded. In 1922, incident to an effort to secure a loan, Mr. and Mrs. Starkweather learned that in consequence of the transaction above noted it was claimed that they had only a life estate in the property and the fee thereto was vested in their heirs. They then sought to have the title corrected by proceedings in court in which Mr. and Mrs. Pinkerton were made defendants. This

appears to have been an amicable suit and a decree
was taken against Mr. and Mrs. Pinkerton, who also
gave a quitclaim deed to Mr. and Mrs. Starkweather
of any interest they might have in the property.
There is now no claim that the Pinkertons have any
rights therein.   It is obvious, however, that neither
the proceedings instituted against the Pinkertons nor
the quitclaim deed given by them to the Stark-
weathers could cut off any interest acquired by the
heirs of either Mr. or Mrs. Starkweather under the
deed of March 24, 1910.

In an effort to remove the cloud still remaining
upon their title, Mr. and Mrs. Starkweather filed an-
other bill in the superior court of Grand Rapids, in
chancery, in July, 1923.   For brevity, we will herein-
after refer to this suit as the title case.   The records
and files of that case were introduced in evidence
upon this hearing.   The bill so filed by Mr. and Mrs.
Starkweather alleged that "they never intended by
the conveyances executed or procured by them to
deprive themselves in any degree of the full use and
enjoyment of said properties."   They claimed no
present interest was conveyed to any of the heirs of
either Mr. or Mrs. Starkweather by the Pinkerton
deed of March 24, 1910, but instead that it was an
ineffectual attempt to arrange a testamentary dis-
position of their properties.   After a hearing in open
court, a decree was taken wherein it was adjudicated
"that the plaintiffs, Adelbert F. Starkweather and
Rosie M. Starkweather, are owners in fee simple
absolute as tenants by the entireties of the property
described in the bill of complaint," etc.

If the court had jurisdiction of both the subject-
matter of the suit and of the parties having an inter-
est therein, the foregoing decree perfected the title
to this property in Mr. and Mrs. Starkweather, and
as the survivor of her husband, Mrs. Starkweather

would now be the sole owner. The jurisdiction of the subject-matter is not questioned; but it is urged that it was not possible to determine who would constitute the heirs in being who would take title to this property under the Pinkerton deed upon the death of the survivor of Mr. or Mrs. Starkweather; and therefore the rights of such unknown heirs could not be adjudicated in the title case. In the finding filed in the circuit court in the present case it is said: "In the opinion of the court, it is not possible to determine the heirs of the present defendant (Mrs. Starkweather) until her death occurs." But does it follow that the condition of the title to this land cannot be adjudicated until the happening of the event which will determine the particular individuals who will ultimately be the heirs? We think not. None of the heirs knew of the making of the Pinkerton deed; but at the time the title suit was brought all of the persons who then were the prospective heirs of either Mr. or Mrs. Starkweather were made parties defendant and were subjected to the jurisdiction of the court by personal service of process or by substituted service. There was no uncertainty as to who were the prospective heirs of either Mr. or Mrs. Starkweather, with the exception of the two children of Mr. Starkweather's first marriage, Florence and Ernest Starkweather. These two children had not been heard from for over 40 years. Their last known residence was East Hamburg, Erie county, New York. It was not known whether they were living or dead. But they were each made a party defendant in the title suit, as were also their unknown heirs, devisees, legatees, and assigns. The statute under which that proceeding was brought provides:

"In all suits and proceedings in chancery, if there be any person   *   *   *   who might at any time

under the provisions or legal effect of any instrument of record claim or be entitled to claim any benefits thereunder, and it is not known whether such person is living or dead, or where he may reside if living, or whether the title, interest, claim, lien or possible right has been by him assigned to any person or persons, or if dead whether he has personal representative or heirs living  *  *  *  it shall be lawful to make such person and *every one claiming under him defendants* in such suit or proceeding by naming such person and adding the words 'or his unknown heirs, devisees, legatees and assigns,' which shall include and be construed to include all persons claiming in any manner under the person named as originally interested in such subject-matter." * * * 3 Comp. Laws 1915, § 12371.

There was full compliance in this case with the statutory requirements for bringing before the superior court all the parties who might by any possibility take an interest under the Pinkerton deed. It is stated in appellees' brief that: "All the statutory provisions relative to proceedings against unknown heirs appear to have been followed." It is not claimed that there was a failure to obtain jurisdiction over any person then in existence who had either an actual or a contingent interest in the property involved in this suit. Thus, having jurisdiction of the parties and the subject-matter, the judge of the superior court determined that the deed which was given to the Pinkertons on March 24, 1910, was nothing more than an attempted testamentary disposition of their properties by Mr. and Mrs. Starkweather and that as such it was subject to revocation; and, further, since they had revoked the provisions formerly made, they were again vested with the title in fee. There were no intervening vested rights or equities which seem to have been over-

ridden by this decree. More than three years have elapsed since it was entered (December 15, 1923), and under the statute (3 Comp. Laws 1915, § 12376) the matter cannot be reopened for any of the defendants, even though they did not have actual notice. We can conceive of no reason why the adjudication should not be accepted as final and fixing the status of the title to this property as therein indicated.

It is argued in appellees' brief that no jurisdiction was obtained in the title case over the unknown heirs, legatees, and assigns because that suit was brought in less than 15 years after the recording of the Pinkerton deed (March 24, 1910). This claim is based upon the section of the statute which in part reads as follows:

"Whenever suit is brought * * * to quiet title to real estate, no one whose actual or possible title, claim or lien is sought to be removed or construed, and whose name appears of record in some public office in connection therewith, may be made a defendant in accordance with the preceding sections, except under his proper name or the name appearing in such record, nor shall *his* unknown heirs, devisees, legatees and assigns be included as defendants therein, unless fifteen years have elapsed since the recording of such title, claim or lien." * * * 3 Comp. Laws 1915, § 12373.

It is obvious that the 15-year limitation provided in the statute applies only to the unknown heirs, devisees, legatees, and assigns of a defendant whose name appears "of record in some public office in connection therewith." None of the defendants in the title case were persons whose *names* so appeared, and therefore the provision of the statute does not apply.

As bearing upon the question of the defendant's having a marketable title, the appellees have made

much of the fact that various financial institutions have refused to make a mortgage loan on this property because of the condition of the title; and it is urged here that this is a substantial reason in support of appellees' contention that the defendant's title is not marketable. While this circumstance is worthy of consideration, it is not conclusive. The objection that a title is defective should have some reasonable foundation in fact. A mere aversion to taking property as security, the title to which is subject to some captious doubt or the remote and improbable possibility of litigation, is not enough. Even the opinion of counsel that a title is bad is not sufficient, if in fact erroneous, to raise such a doubt as will render a title unmarketable. 27 R. C. L. p. 492.

"To render the title unmarketable the doubt as to its validity must be what is termed a 'reasonable doubt;' it is not every doubt or suggestion or even threat of contest that will be sufficient; otherwise an assailing purchaser might in every case raise or make such an objection; and to avoid this the rule is now well settled that the doubt must be a reasonable doubt. The mere possibility of suspicion of a defect is not sufficient if the title is such that it ought to satisfy a man of ordinary prudence." 27 R. C. L. p. 490.

"A marketable title is one which is free from incumbrance, and which is of a character to assure the vendee the quiet and peaceable enjoyment of the property." *Barnard* v. *Brown,* 112 Mich. 452 (67 Am. St. Rep. 432).

We are of the opinion that the defendant's title is marketable and that the plaintiffs herein should be content to accept a conveyance thereof in satisfaction of the terms of their contract. It follows that the decree of the lower court must be set aside and

the defendant granted the relief sought in the cross-bill. If within 60 days from the filing of this opinion the plaintiffs shall pay the balance of the purchase price to the clerk of the circuit court of Kent county, to be paid by said clerk to the defendant upon the delivery to the clerk or to the plaintiffs herein of a warranty deed, as provided in the contract here involved, a decree may be taken dismissing both the bill and the cross-bill, without costs to either party; but in default of such payment, the appellant may take a decree of foreclosure, with costs of both courts.

FEAD, C. J., and FELLOWS, WIEST, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.