## ESCHER v. BENDER.

1. BOUNDARIES—ESTABLISHMENT BY ACQUIESCENCE.

Boundary line between adjacent parcels of land, as established by a fence or other marker that is acquiesced in by the owners of the parcels, becomes the actual boundary line of the properties and will not be changed even though a subsequent survey shows error.

2. SAME—ACQUIESCENCE—CONVEYANCE.

All land within a boundary line that has been established by acquiescence is included within the original description and passes with the property to which it has become attached.

3. SAME—ACQUIESCENCE—MARKERS.

A boundary line may not be said to be established by acquiescence, where no fences, monuments or other man-made markers have been established.

4. ADVERSE POSSESSION—TITLE—MARKETABLE TITLE.

Title established through adverse possession is free from encumbrance and of a character to assure quiet and peaceful enjoyment of the property by the owner, but it is not a marketable title of record until there has been a judicial determination of such title.

5. VENDOR AND PURCHASER—MARKETABLE TITLE.

A title to real estate may be regarded as unmarketable if a reasonably careful and prudent man, familiar with the facts,

---

* Continued from Volume 337.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 8 Am Jur, Boundaries §§ 80, 81.
[1–3] Establishment of boundary line by acquiescence. 69 ALR 1491;
113 ALR 432.
[4–6] 55 Am Jur, Vendor and Purchaser § 214.
[4–6] Title by adverse possession as marketable title. 57 ALR 1331,
1508.

would refuse to accept the title in the ordinary course of business; it being unnecessary that the title be actually bad in order to be unmarketable but only such a doubt or uncertainty as may reasonably form the basis of litigation.

6. Same—Rescission—Misrepresentation—Marketable Title—Adverse Possession.

Purchaser of tract of real estate was entitled to rescission on the basis of defendant's misrepresentation as to the amount of land to which he could give a marketable title of record, where title to a substantial portion of the land in area and value was claimed by him by adverse possession but such title had not been judicially determined.

Appeal from Lake; Neal (Max E.) J. Submitted October 13, 1953. (Docket No. 63, Calendar No. 45,952.) Decided November 27, 1953.

Bill by Meta Olga Escher against Joseph F. Bender to rescind sale and to have deed to plaintiff set aside. Decree for plaintiff. Defendant appeals. Affirmed.

*Legatz & Lidke,* for plaintiff.

*Linsey, Shivel, Phelps & VanderWal,* for defendant.

Adams, J. This is an action in chancery to set aside a conveyance of real estate on the ground that it was induced by the fraud, misrepresentation and mistake of the defendant.

Joseph F. Bender, defendant and appellant, owned lot 3, section 2, township of Sauble, Lake county, Michigan. Some years ago the land was used as a farm, but it now has greater value as a resort area because of its proximity to a number of lakes.

In 1951, Meta Olga Escher, plaintiff and appellee, became interested in purchasing the property as an investment. She viewed the area in company with

the defendant and 2 real estate brokers and was told
the approximate boundaries of the lot. While the
defendant had no survey, he told plaintiff that he
knew the extent of his property and pointed out
certain fences, trees, water channels and lake shores
as marking the property lines. Plaintiff was told
that the property had an extensive shore line on 3
lakes and that it included within its boundaries a
trout creek for a distance of some 500 to 600 feet
northeasterly from a bridge on the premises.

Plaintiff decided to purchase the property and on
May 11, 1951, an agreement was executed, under the
provisions of which defendant agreed to sell the
property. The agreement provided for the delivery
of certain instruments and moneys to an escrow
agent who was authorized to complete the transac-
tion upon the fulfillment of stated conditions and re-
quirements, 1 of those conditions being that the de-
fendant supply an abstract of title and tax history
certified to date which when examined by a desig-
nated attorney would place "a good marketable title
in the name of the first party."

The conditions of the escrow having been appar-
ently complied with, defendant on June 6, 1951,
conveyed the property by warranty deed to the plain-
tiff and the plaintiff paid to defendant the sum of
$7,000 in cash and gave a mortgage and note for the
unpaid balance of $7,000.

Thereafter, plaintiff employed a registered sur-
veyor to survey the property in anticipation of its
development as a summer resort area. The survey-
or, working from the original government survey
and a private survey made in 1908 and utilizing cer-
tain monuments located some distance from the
property, established the boundary lines of the area
as described in the conveyance. The survey indi-
cated that the property had substantially the same
frontage on one lake as represented by defendant, a

much lesser frontage on a second lake and none on the third. It also appeared from the survey that the description included considerably less of the trout stream than had been pointed out to the plaintiff prior to sale.

When plaintiff discovered that the survey did not include much of the land, and particularly the lake and river frontage, that she had been led to believe she had purchased from the defendant, she promptly gave written notice to the defendant that she was rescinding the purchase, tendered a deed of the property, and demanded the return of the down payment, mortgage and note. Upon defendant's refusal to set aside the transaction, plaintiff instituted this action alleging that because of the fraud, misrepresentation and mistake of the defendant, she had not received the property which defendant had agreed to convey to her.

Defendant, in his answer, alleged that the property was fenced on the north and east sides and on a part of the south side and that the remaining boundaries were marked by the shore line of lakes and channels. Further, that he and his predecessor in ownership had openly used the premises within such boundaries for a period of approximately 40 years without interference or objection from others and that, as a result of such acquiescence by adjacent property owners in the boundary lines as established and maintained, such fences and shore lines had become the legal boundary line of the premises known as lot 3, section 2, Sauble township, Lake county. It was the contention of the defendant, therefore, that having established the boundaries of the lot by acquiescence of adjacent land owners and having produced an abstract which showed a marketable title to the lot, he had fulfilled the requirements set forth in the sales agreement.

At the conclusion of the trial, the court found that defendant did not have marketable title of record to a substantial portion of the land purportedly conveyed to plaintiff and decreed that the conveyance be set aside because of misrepresentation and mistake. Defendant appeals.

When a boundary line between adjacent parcels of land is established by a fence or other marker and the line so established is acquiesced in by the owners of the adjacent parcels, it has been held that the line becomes the actual boundary line of the properties and will not be changed even though a subsequent survey shows error.

"Where coupled with acquiescence is the further fact that it has continued for the statutory period, such acquiescence for such statutory period* fixes the line. *Call* v. *O'Harrow,* 51 Mich 98; *Diehl* v. *Zanger,* 39 Mich 601; *Greene* v. *Anglemire,* 77 Mich 168; *F. H. Wolf Brick Co.* v. *Lonyo,* 132 Mich 162 (102 Am St Rep 412); *Marion* v. *Balsley,* 195 Mich 51. So in *Gildea* v. *Warren,* 173 Mich 28, the plaintiff had not been in possession of the premises for the statutory period. If the question of tacking was involved, she could not tack on the period of occupancy of her predecessors in title, but the fences had been acquiesced in for more than the statutory period and it was held that they fixed the line, and in *Bunde* v. *Finley,* 224 Mich 634, while the court held that defendant could not tack on the period of possession of his predecessor to his own in order to establish adverse possession, we at the same time sustained the following instruction:

" 'Where a fence has been treated and acquiesced in as the correct boundary line between adjacent owners for 15 years the boundary line ought not to be disturbed even if there were some variance from the true line, and a long established fence is better evidence of actual boundaries settled by practical

* See CL 1948, § 609.1 (Stat Ann § 27.593).—REPORTER.

location than a survey made after the monuments' of the original survey have disappeared. And where a boundary line has been recognized and acquiesced in for 15 years it would not be disturbed by reason of new surveys.'

"The instant case falls within the line of cases last discussed. The testimony clearly establishes that for over 40 years the line claimed by defendant has been acquiesced in. On both sides of the line the respective parties have used to the line and no further; for many years a fence was maintained; in later years the business property has been used up to the line and, as we understand the record, improvements of some cost have been made by defendant. That the respective parties have acquiesced in the line for more than the statutory period is abundantly sustained by the proof. To restate the question of acquiescence, let us say: While acquiescence alone is not a defense, if acquiescence follows the resolving of a doubt as to where the line is or the settlement of a bona fide controversy, which settlement agreement contemplates an agreed line, and the monuments of such line are fixed and maintained thereafter such line so established and acquiesced in is the line, and the acquiescence need not continue for the statutory period; likewise where the line is acquiesced in for the statutory period it is also fixed." *Hanlon* v. *Ten Hove,* 235 Mich 227, 230 (46 ALR 788).

A boundary line having been established by acquiescence, all land within that boundary is included within the original description and passes with a conveyance of the property to which it has become attached.

"If the boundary line of lot 28 was never in dispute, and the fenced-in portion of lot 2 was but an encroachment, then plaintiff's right, if any, to the disputed strip rested upon prescription and not on a boundary line established by acquiescence. On the other hand, if the fence was placed in assertion of

the boundary line of lot 28, and encroached upon lot 2, and, for upward of 15 years, plaintiff and her predecessors in title claimed it was on the boundary line and used and occupied lot 28 up to such line, with the acquiescence of the owner of lot 2, then the boundary line between lot 28 and lot 2 is fixed, and the strip so occupied falls within the call for lot 28." *Jeffries* v. *Sheehan,* 242 Mich 167, 170.

We are of the opinion, however, that the rule establishing a boundary line through acquiescence of adjacent owners of land does not apply in the instant case. This is not an action between 2 property owners disputing ownership to a strip of land lying between their properties. No fences, monuments or other markers have been established along much of the claimed boundaries of the land that defendant says he owned.

We are here concerned with a determination of whether defendant, at the time of sale, had a marketable title of record to an unfenced area land not included within the survey of the premises described in defendant's deed. Defendant claims that he owned a sizeable area to the south of the lands included within the survey. That area is not bounded by a marker or fence placed there by an owner. Its boundaries are the natural shore line of the lakes and connecting channel. At 1 point the land in dispute extends approximately 1,000 feet south from the confines of the area as surveyed and testimony indicates that it has a value of some $8,000 to $9,000.

If defendant had title to this sizeable area of land, we believe that he acquired it by adverse possession and not by acquiescence in a boundary line established by the owners of the adjacent parcels.

By the terms of defendant's agreement to sell the premises, he was bound to convey to the plaintiff a good marketable title as shown by the abstract. Title established through adverse possession is free from

encumbrance and of a character to assure quiet and peaceful enjoyment of the property by the owner (*Delnay* v. *Woodruff*, 244 Mich 456), but it is not a marketable title of record until there has been a judicial determination of such title.

"To show a record title by adverse possession requires a suit and the recording of a decree.

"Where title by adverse possession as to land involved in option agreement was not of record, it was not a marketable title, since there was a substantial defect in the title." *Deane* v. *Rex Oil & Gas Co.* (syllabi), 325 Mich 625.

"A title may be regarded as unmarketable if a reasonably careful and prudent man, familiar with the facts, would refuse to accept the title in the ordinary course of business. It is not necessary that the title be actually bad in order to render it unmarketable. It is sufficient if there is such a doubt or uncertainty as may reasonably form the basis of litigation." *Bartos* v. *Czerwinski*, 323 Mich 87, 92.

The defendant has not quieted title to the property through the statutory proceedings available to him. There is nothing on public record at the present time which could be placed in an abstract to indicate defendant's ownership of the property outside of the boundaries established by the survey. While the record in this case discloses certain facts from which a court in proper proceedings might determine that the defendant had title to the property by adverse possession, nevertheless as of the moment such ownership must depend upon the testimony of those persons who have been in a position to observe the use of the property for a period of more than 15 years. Plaintiff did not bargain for that kind of title.

Defendant agreed to convey to the plaintiff a marketable title of record to a valuable parcel of real estate. It is clear from the record that he is unable to carry out that commitment. While there

is no showing that he intentionally misled the plaintiff, he was obviously mistaken when he told her that he had a good record title to the property. Plaintiff relied upon that information in making the purchase.

The conveyance should be set aside, the purchase money returned to plaintiff and the mortgage and note cancelled. The decree is affirmed, costs to plaintiff.

DETHMERS, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.