OUELLETTE v. BELANGER.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT TO LEAVE PROPERTY BY
    WILL—PART PERFORMANCE.
      Specific performance of oral contract is awarded plaintiff nephew
        whereby decedent aunt had agreed to leave him by will an
        undivided 1/2 interest in premises upon which plaintiff and
        his late uncle had operated a retail liquor business in return
        for his agreement not to exercise his written option to purchase such interest within 30 days of uncle's death, where
        plaintiff had fully performed on his part and aunt had
        thereby obtained a right to a prorata share of the income
        from the business for the balance of her life; her subsequent
        change of will to leave plaintiff but $2,000 in cash constituting a fraud upon the nephew under the circumstances
        (CL 1948, §§ 566.108, 566.110).

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 57 Am Jur, Wills § 192.

2. Appeal and Error—Specific Performance—Findings of Trial
   Court—Witnesses—Credibility.

> The Supreme Court does not disturb the findings of the trial
> court in a suit for specific performance of an aunt's oral
> contract to leave an undivided interest in premises upon
> which plaintiff and his late uncle had conducted a retail
> liquor business, since the trial court heard the witnesses and
> observed their demeanor and noted their affirmations and
> evasions.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted June 3, 1958. (Docket No. 13, Calendar No. 47,587.) Decided September 10, 1958. Rehearing denied October 13, 1958.

Bill by Marvin Ouellette against C. Joseph Belanger, administrator with will annexed of the estate of Mae Ouellette, and Julia Jewell Greenwell, beneficiary under the will, for specific performance of oral contract to devise property. Decree for plaintiff. Defendants appeal. Affirmed.

*Cleary & Weins,* for plaintiff.

*Nelson S. Shapero,* for defendants.

Kelly, J. Plaintiff, Marvin Ouellette, entered into a written agreement with his uncle and aunt, Peter and Mae Ouellette, whereby he would, with them, own an undivided 1/2 interest as tenants by the entireties in premises upon which they operated a class "C" tavern. This agreement provided that in the event of death of Marvin or Peter Ouellette, the survivor would have the first option or refusal to purchase from the widow, heirs, executors or assigns, the undivided 1/2 interest held by the other in the land contract and premises. Peter Ouellette died on November 14, 1953, and his wife, Mae Ouellette, became the owner of his 1/2 interest in the premises and the bar.

In his bill of complaint, plaintiff stated he talked to Mae Ouellette about his rights under the option after the death of her husband and that she asked him not to exercise those rights because she wanted the income from the property. His witnesses testified that Peter Ouellette's wife, Mae, told him she would prepare a will in which the premises would be left to him upon her death. Plaintiff's suit was predicated upon the fact that he relied upon that promise and, therefore, did not exercise his rights under the option.

On December 18, 1953, Mae Ouellette executed a will, which was deposited with the Wayne county probate court on January 14, 1954, devising and bequeathing all her rights in the property above described to Marvin Ouellette, "nephew of my deceased husband;" and further provided:

"It is my express intention that the title to the property heretofore described as 15209-11 Kercheval avenue, Grosse Pointe Park, Michigan, shall be vested in Marvin Ouellette and shall in no event be utilized for the payment of any cash bequests; in the event the balance of my estate is insufficient to pay the other cash bequests, it is my express intention that the amount of those cash bequests shall be prorated between those entitled thereto."

Mae Ouellette moved to Huntington, West Virginia, on or about December 21, 1954. On May 27, 1955, she executed her final will, in which she devised her interest in this property to her sister and gave to Marvin Ouellette $2,000. . Mae Ouellette died November 13, 1955.

In finding for plaintiff, Hon. Chester P. O'Hara filed a carefully prepared opinion, stating:

"It is the claim of all of these witnesses that these conversations which they related occurred within the 30-day period after the death of Peter on November

14, 1953. The court has observed these witnesses on the stand. They are all high-type people, all apparently trying to tell the truth, in the estimation of this court, and the court sees no reason for not giving to them the credit which apparently they are entitled to. We are not dealing with the people who have no standing in the community. We are dealing with responsible citizens of this community. The court observed them carefully and listened to them intently and made copious notes of what was said. * * *

"Mr. Belanger (Mae Ouellette's attorney) testified that this was a lady of more than ordinary intelligence, apparently a keen individual, who had good business acumen, and that she was very honest and thrifty and very high type. In my judgment at the time she went down to him and had this first will prepared in December of 1953, she was definitely carrying out her agreement with Marvin and making sure that it was—that nothing was going to happen to that particular property. * * *

"I hold that there was a contract, and that it has been proven by a clear and convincing manner and testimony and certainly by a preponderance of the testimony.

"The second question relates to the statute of frauds, whether or not is it applicable here. Well, it isn't necessary to read CL 1948, § 566.108 (Stat Ann 1953 Rev § 26.908), with reference to what must be done under the statute of frauds on an oral agreement. We all know it must be in writing. The court is particularly interested in CL 1948, § 566.110 (Stat Ann 1953 Rev § 26.910), which says: 'Nothing in this chapter contained shall be construed to abridge the powers of the court of chancery to compel the specific performance of agreements, in cases of part performance of such agreements.'

"I have already dealt with the question of no change of possession and things of that kind that may have been involved here. He had an option which he could exercise within 30 days after Peter died, and he could have bought that property, bought

Peter's and Mae's interest in that property as of that time for whatever the value of the property was as determined by arbitrators under the agreement, and under the contract as I find it to be he agreed that he wouldn't exercise that option, that he would forego that right, and he would continue doing what he was doing in the way of collections, and so forth, giving to her her prorata share upon her promise to make a will to him of the property.

"Now, counsel says there wasn't any consideration. Well, there was a promise for a promise. The fact that she may have done something, gave him something that he would have had to pay for, that is her business. The reasons that she may have had for doing that are her business, but I can readily see, in view of the situation existing between her husband and Marvin and the feeling and affection that was apparently there, she was doing what she wanted to do and was also providing for herself during the rest of her lifetime in getting the income from this property. Apparently that is all she was interested in. She had a right to make a contract like that. I think there was adequate consideration, and I think that when she went to West Virginia and changed that will and took from him that which she had agreed to give him, that she did exactly what is contemplated in this case of *Adado* v. *Assid,* 332 Mich 628, and other cases of similar import.

"In other words, I would say that her conduct down there when she changed that will was not only misleading but was fraudulent on her part insofar as Marvin Ouellette was concerned, because she took from him that which she had agreed to give him, and the 30 days had expired and he had no alternative insofar as the option was concerned. * * *

"I find that the contract wasn't unfair, and neither was it inequitable, and there is no claim that she didn't know what she was doing. I think that under the circumstances, specific performance should be granted. * * *

"I hold in this case that Marvin Ouellette completely performed.

"So for the reasons stated, I hold that the statute of frauds does not apply, that there was sufficient performance to take it out of the statute of frauds and place it under CL 1948, § 566.110 (Stat Ann 1953 Rev § 26.110), and I hold that in equity this court should enforce this contract between these parties. A decree may be prepared accordingly."

After an examination of the briefs and appendices submitted, we do not feel it is necessary to say more than this: We are in complete accord with the chancellor's findings.

In *Urick* v. *Burge,* 350 Mich 165, 173, we stated: "Now, upon what conceivable ground can we in this Court, who saw nothing of the witnesses and their demeanor, who heard nothing of their testimony, with its affirmations and its possible evasions, overrule the trial chancellor?" That observation is particularly applicable to this appeal.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.