### RIX v. O'NEIL.

1. ASSIGNMENTS—ACCOUNTS RECEIVABLE—NOTICE—FILING—SECURITY FOR ANTECEDENT DEBTS.

    The statute relative to the assignment of accounts receivable makes it necessary to give notice to subsequent purchasers of the assignment of an account receivable in order to perfect such assignment, where it has been given as security for an antecedent debt, unless it has been filed in the office of register of deeds (CL 1948, § 691.902).

2. ESTOPPEL—EQUITABLE ESTOPPEL—MEANS OF KNOWLEDGE.

    It is essential to the application of the principle of equitable estoppel that party claiming to have been influenced by conduct or declarations of another, to his injury, was himself not only destitute of knowledge of the state of the facts, but also destitute of convenient or available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.

REFERENCES FOR POINTS IN HEADNOTES
[1]  4 Am Jur, Assignments §§ 88, 108.
[2]  19 Am Jur, Estoppel § 86.
[3]  3 Am Jur, Appeal and Error § 912.
[5]  14 Am Jur, Costs § 92.

3. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—CREDI-
BILITY OF WITNESSES.

The Supreme Court hears chancery cases *de novo* but will not
ordinarily reverse the lower court, where there is evidence and
testimony to support its finding unless justice demands it, or
it can be said that the evidence clearly preponderates the other
way, as the trial court is in a better position to test the credi-
bility of the witnesses by observing them in court and hearing
them testify than is an appellate court without such oppor-
tunity.

4. ASSIGNMENTS—NOTICE TO PURCHASER OF VENDOR INTEREST—WAIV-
ER OF MECHANIC'S LIEN.

Plaintiff wholesale lumber company which had furnished lum-
ber for the construction of various houses and given a waiver
of mechanic's lien upon receipt of payment of amount fur-
nished to premises involved herein from purchaser of land con-
tract vendor's interest was not estopped from claiming a sum
due from such purchaser by reason of not having filed its pre-
viously received assignment of accounts receivable from the
assignor of the vendor interest but limited with respect to the
premises involved to the amount provided as a limitation in
the unfiled assignment of which the purchaser of the vendor
interest had notice (CL 1948, § 691.902).

5. COSTS—CHANCERY CASES—FAILURE OF EITHER PARTY TO PREVAIL.

No costs are allowed either party involved in an appeal and
cross appeal, where decree entered in a complex equity suit
is affirmed, since neither appellant nor cross appellant has
prevailed.

Appeal from Macomb; Miller (Allan C.), J., pre-
siding. Submitted January 12, 1962. (Docket No.
37, Calendar No. 48,826.) Decided March 16, 1962.

Bill by Harold K. Rix and James E. Wells, co-
partners doing business as Builders Wholesale Lum-
ber Supply Company, against Raymond L. O'Neil,
Helen L. O'Neil, C. M. Reed, Inc., a Michigan cor-
poration, Home Lumber Co., Inc., a Michigan cor-
poration, John R. Gerber, Paula S. Gerber, John E.
Gerber, and Martha Gerber, to determine sums due
for materials furnished corporate defendant building
contractors on various jobs, to impress equitable

lien on property and home built for and being pur-
chased on land contract by defendants John R. Ger-
ber and Paula S. Gerber, and to foreclose lien if sums
remain unpaid.  Cross bill by individual defendants
praying that quitclaim deed given plaintiffs as se-
curity for materials furnished on various jobs be
canceled as a cloud on their title.  Decree granting
plaintiffs full relief against defaulting corporate de-
fendants, granting partial relief against defendants
O'Neil, and granting defendants O'Neil and Gerber
relief by cancellation of plaintiffs' quitclaim deed.
Defendants O'Neil appeal.  Plaintiffs cross-appeal.
Affirmed.

*Myron Schiffman,* for plaintiffs.

*Milton F. Cooney,* for defendants O'Neil.

KELLY, J.  Plaintiffs, a wholesale lumber supply
company, seek to establish an equitable lien upon a
land contract assigned by defendant C. M. Reed,
Inc. (hereinafter referred to as Reed), to defendants
Raymond L. O'Neil, a realtor, and Helen L. O'Neil,
his wife (hereinafter referred to as O'Neil).

Defendant Reed contracted to construct a home
for defendants Gerbers (who were father and son
and their respective wives, and hereinafter referred
to as Gerbers).  The father owned a lot next door
to his home which he wished to give to his son as
a wedding present so the son could build a residence
thereon.  The contract for the construction of the
house was entered into on September 19, 1956, and
the contract price thereof was $10,177.  The Gerbers
were to pay $4,177 under the contract and obtain a
mortgage for the balance of $6,000.  In the event the
Gerbers could not get a mortgage, then they were
to convey to defendant Reed, who would thereupon
sell them the property with the improvements for

$6,000 on a land contract, at 6% interest, and payments of 1% of balance.

Defendant Home Lumber Co., Inc. (hereinafter referred to as Home), was closely affiliated with defendant Reed, the 2 corporations having common officers.   C. M. Reed was the sales representative of defendant Home.   Defendant Home had purchased lumber and materials from plaintiffs, and on November 1, 1956, it was indebted to plaintiffs in the approximate amount of $10,000.   On this date Home gave an assignment to plaintiffs of all moneys, property interest, et cetera, due it from jobs, for the debt and to secure future credits.   At this time defendant Reed, with defendant Home, signed a similar assignment relating to the Gerbers' job, and Home also gave a quitclaim deed to plaintiffs for any interest it might have in Gerbers' property.   Under the assignment defendant Home could collect interim payments from the purchasers, as agent for plaintiffs.

No mortgage was available for the Gerbers when the residence was completed in January, 1957, so on January 17, 1957, defendants Gerbers conveyed the property to Reed, and Reed, in turn, sold it back on a land contract in accordance with the agreement. On January 18, 1957, Reed assigned the land contract to O'Neil for $4,500 (25% less than the contract balance).   These instruments were not recorded until April 9, 1957, but the trial court found, and the evidence clearly shows, they were executed and delivered on the above dates.

O'Neil paid for the assignment of the land contract from Reed by 2 checks written on his special account: 1 payable to plaintiffs in the amount of $1,798.37 and the other payable to Home in the amount of $2,701.63.   No check was issued to Reed, the assignor. The check to plaintiffs was for the amount of materials furnished by plaintiffs on the Gerbers' job.

The check was picked up by plaintiffs' then employee, Jack Crawford, who left a properly executed waiver of mechanic's lien. The amount of the check was credited to the Home account by plaintiffs.

The Gerbers, notified of the assignment of the land contract, made payments to O'Neil. Two months later, in March, 1957, defendants Gerbers obtained a mortgage commitment and were all set to close same and pay off the land contract when plaintiffs notified them they were claiming a lien on the proceeds under the November 1, 1956, assignments received from Reed and Home (who are now defunct). Defendants Gerbers are now making payments to their attorney (agreed to by the parties) which payments are to be paid over to the party determined to be entitled thereto.

Plaintiffs recorded their quitclaim deed (dated November 1, 1956) from defendant Home on March 22, 1957, and the instruments executed on January 17 and 18, 1957, were placed on record by O'Neil on April 9, 1957.

Plaintiffs ask that an equitable lien be established on the land contract payments, contending defendants knew of their assignment rights, and they also seek judgment against Reed and Home for the amount still owed, *i.e.,* $5,956.31.

Defendants Gerbers and O'Neil deny they knew of the assignments to plaintiffs and contend plaintiffs are estopped by reason of their waiver of mechanic's lien and the receipt of defendant O'Neil's check. Defendants filed cross bill asking that plaintiffs' quitclaim deed from Home be set aside as a cloud on their title.

The trial court found that defendants Gerbers were innocent pawns in this matter and knew nothing of the assignments. The court held, however, that defendant O'Neil knew of the asignments to plaintiffs, and entered a decree establishing a $1,000.

lien, plus interest, on the Gerbers' land contract payments in favor of plaintiffs. This amount was to be credited to defendants Gerbers on their land contract balance and also apply to reduce the debt owed to plaintiffs by Reed and Home; which the court decreed to be $5,956.31. The quitclaim deed to plaintiffs was set aside and title declared to be in defendant O'Neil, subject to plaintiffs' equitable lien and defendants Gerbers' vendees' interest.

Defendant O'Neil appeals and plaintiffs cross-appeal contending the amount of lien should be for the full amount of the contract ($6,000), less the $1,798.37 paid by O'Neil. The amounts decreed to be owed to plaintiffs by defendants Home and Reed were entered by default, and no appeal has been taken by these defendants.

Plaintiffs suggest the assignments from Home and Reed were asignments of accounts receivable and that under CL 1948, § 691.902 (Stat Ann 1959 Rev § 19.842), it was not necessary to give notice to subsequent purchasers. This statute does so provide, but if the assignments are given as security for an antecedent debt the statute requires that they be recorded. The assignments herein were never recorded, and the evidence clearly shows they were given for an antecedent debt. At the time of the assignments, Home and Reed were admittedly in debt to plaintiffs and plaintiffs' witness, Ernest J. Wells, testified:

"*Q.* Then, in fact, these assignments of November 1st were for security purposes as to these antecedent debts they owed to you and also future obligations they might have?

"*A.* Yes, sir."

The plaintiffs, therefore, cannot rely on this statute. The evidence clearly shows that defendants Gerbers were unaware of what was transpiring and were

"innocent pawns." As to defendant O'Neil however, the trial court stated "that the relationship between O'Neil and defendant corporations was so close that it did not stop short of committing improprieties," and concluded "that O'Neil knew of the assignment." The basis of the court's conclusion was O'Neil's demeanor and unsatisfactory answers; that the 25% discount on the land contract was, under the circumstances, such as would put a reasonably prudent and honest man on inquiry; that O'Neil's check for the asignment of the land contract was to Home rather than the assignor Reed, indicating O'Neil was aware of the assignments which allowed Home to collect interim payments; that O'Neil held the documents from recording so that plaintiffs would be unaware of same and a mortgage could be obtained before plaintiffs could act.

Plaintiffs admit no actual notice was given by them to any of the parties until they discovered the impending mortgage being obtained by the Gerbers, and defendant O'Neil denied knowledge of the assignments until so told in his attorney's office some time after defendants Gerbers were notified by plaintiffs of their claimed lien.

Plaintiffs contend that when it delivered the waiver of mechanic's lien and received the check, it was performing a routine clerical function and that its then employee, Jack Crawford, was not shown to have been informed that O'Neil was purchasing Reed's interest in the land contract.

Neither party called Jack Crawford to testify, nor did anyone from the Reed and Home corporations testify.

The basic question presented is whether defendant O'Neil had or should have had knowledge of plaintiffs' assignment.

In *Sheffield Car Co.* v. *Constantine Hydraulic Co.*, 171 Mich 423, 450 (Ann Cas 1914B, 984), we stated:

" 'It may be stated as a general rule that it is essential to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another, to his injury, was himself not only destitute of knowledge of the state of the facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that, where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.' "

From the printed appendices filed herein arguments could be made either way and must ultimately rest upon the credibility of the witnesses. In this we do not have the advantage of the trial judge who had the opportunity to hear and observe the witnesses, and who commented in regard to defendant O'Neil as follows:

"Furthermore, O'Neil's credibility was very successfully attacked and his demeanor on the witness stand was not convincing. He testified that he wasn't sure who the promoters of defendant corporations 'paraded' as C. M. Reed, but that nevertheless said Reed was present when O'Neil notarized Reed's signature. Upon presentation of the transcript of a prior hearing, O'Neil admitted that on an earlier occasion he had given answers to questions stating that at the request of the promoters of said defendant corporations, Reed corporation and Home Lumber Co., Inc., he had notarized the signature of Reed without seeing him sign. Two inferences are drawn from this: First, that the relationship between O'Neil and defendant corporations was so close that it did not stop short of committing improprieties. Secondly, that O'Neil's testimony is to be carefully scrutinized, if to be accepted at all. Add to this the occasional deepening of usual red complexion, guarded and unsatisfactory answers

and many difficult-to-describe factors, and the conclusion is strengthened."

In *Mousseau* v. *Walker,* 356 Mich 373, 379, we said:

"Although this Court on appeal hears chancery cases *de novo,* it ordinarily will not reverse the lower court where there is evidence and testimony to support the finding of the lower court unless justice demands it, or it can be said that the evidence clearly preponderates the other way, the trial judge being in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. *Grace Harbor Lumber Co.* v. *Ortman,* 190 Mich 429, 438; *Van Allen* v. *Sprague,* 206 Mich 116, 120; *Higbie* v. *Chase,* 306 Mich 577; *Dodge* v. *Blood,* 307 Mich 169; *Bennett* v. *Bennett,* 336 Mich 133; *Kren* v. *Rubin,* 338 Mich 288; *Kirby Terminal Co.* v. *City of Detroit,* 339 Mich 155; *Dudley* v. *Rapanos,* 353 Mich 237; *Ouellette* v. *Belanger,* 353 Mich 603; *Futernick* v. *Cutler,* 356 Mich 33."

The evidence supports the finding of the lower court. Defendant O'Neil cannot claim plaintiffs are estopped by reason of the waiver of mechanic's lien and the receipt of O'Neil's check.

Plaintiffs, in their cross appeal, contend that the lien should have been for the amount of the contract ($6,000) less the amount received from defendant O'Neil ($1,798.37) for materials furnished, instead of the $1,000. On this question the trial court held:

"That the assignment introduced as exhibit A limits plaintiff's rights under the specific assignment introduced as exhibit C so that plaintiff's lien is only $1,000, plus interest from date it should have been paid."

The assignment, designated as exhibit A, provided:

"Second party will thereafter undertake with all due speed the necessary negotiations to convert the said security to cash, either by sale of the land contract or by conversion of the same to a first mortgage with a financial institution. Out of the proceeds of said conversion the first party shall be entitled to recover all credits for materials advanced to said job, *plus the sum of $1,000 which shall be applied to any other outstanding obligation owing to first party.*" (Emphasis supplied.)

At the time O'Neil purchased the land contract from Reed this is the sum which would have been payable to plaintiffs. Plaintiffs did, in fact, receive the amounts due for the materials from defendant O'Neil, and the trial court properly held they were entitled only to the further sum of $1,000.

Decree of the lower court affirmed. No costs, neither party having prevailed.

DETHMERS, C. J., and CARR, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.