*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIFFANY A. FIELDS and DENNIS L. FIELDS, JR.,

        Plaintiffs-Appellants,

v

SAHERS, LLC,

        Defendant-Appellee.

UNPUBLISHED
October 26, 2023

No. 363092
Kent Circuit Court
LC No. 21-006588-CH

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

In this boundary dispute, plaintiffs appeal as of right the trial court's order denying plaintiffs' motion for summary disposition under MCR 2.116(C)(10) and granting defendant summary disposition under MCR 2.116(C)(10). We reverse and remand.

## I. FACTUAL BACKGROUND

This case involves a dispute over adjoining properties that share a legal property line. The two properties involved are 4908 Division Street (the Division Street property), which is owned by defendant, and 24 Daniel Street (the Daniel Street property), which is currently owned by plaintiffs. The dispute arose because defendant destroyed a fence that was constructed 36 feet onto defendant's property.

To understand this dispute, it is helpful to understand the history of the property. George and Mary Dyhouse, plaintiff Tiffany Fields's adoptive parents, acquired the Daniel Street property on April 17, 1992. The fence was present on the land when the Dyhouses bought the property, and in the ensuing years, it was treated as the property line between the Division Street and Daniel Street properties. Mary passed away in 2010, leaving George the sole owner of the Daniel Street property. Defendant acquired title to the Division Street property in 2013 with a plan to rehabilitate an abandoned gas station located on that parcel. At the time of purchase, the eastern portion of the Division Street property, including the disputed area, was zoned as residential. The rest of the property was zoned as commercial.

In April 2013, the Kentwood Planning Commission held a public hearing regarding a proposal submitted by defendant to rezone the residential portion of the property. George Dyhouse and Steven Dyhouse, Tiffany's brother, made comments at the hearing. Steven indicated that he was afraid that defendant would move the fence over to the legal property line, which ran along the driveway of the Daniel Street property. A representative from defendant's construction firm responded "that legally [defendant] could move the fence further back, but [defendant] plan[ned] to leave [the fence] where it [was] currently located." The Kentwood Planning Commission approved defendant's rezoning request.

In 2014, George told defendant's sole owner and representative, Saherinder Kaur, that the fence did not mark the legal property line between the two properties and that the disputed area was a part of defendant's property. At that time, Kaur already knew that the disputed area was a part of the Division Street property and had been paying the property taxes on the entire parcel since acquiring it in 2013. According to Tiffany, George stated that the family had permission to use the disputed area, provided that the family maintained the disputed area's lawn. However, Kaur stated in an affidavit that in April 2014, she hired someone to mow on both sides of the fence. George asked her to stop mowing in August 2014 because he was unwell and the noise was bothering his rest, at which point Kaur stopped mowing the disputed area. She took no action to move the fence or reclaim the disputed area at that time. George passed away in 2018, and Tiffany became personal representative of his estate. Within a month of George's death, plaintiffs moved into the Daniel Street property. Later in 2018, plaintiffs constructed a storage shed in the disputed area.

On October 8, 2020, Kentwood Police Department Officer Ralph Mason visited plaintiffs to investigate a complaint regarding two inoperative cars located on 24 Daniel. Officer Mason spoke to Tiffany, who "said that the [disputed area] actually belongs to [defendant] next door, but they have permission to use [the disputed area] as long as they cut the grass," which "has gone on for 30 years per the house owner." Officer Mason contacted plaintiffs again on October 12 and 13, 2020, to ensure that the inoperative cars were moved off the property. Both cars were moved by October 26, 2020. No further incidents involving the property occurred in 2020.

On June 11, 2021, Tiffany, as personal representative of George's estate, conveyed the property to herself and her siblings via quitclaim deed. Also on that date, Tiffany's siblings conveyed their interest in the property to her via quitclaim deed, and in turn, she conveyed part of her interest to her husband, plaintiff Dennis Fields, via quitclaim deed. Thus, plaintiffs acquired title to the Daniel Street property on June 11, 2021.

On June 15, 2021, Officer Mason again spoke to Tiffany regarding a complaint concerning a parking violation on the property. Tiffany told him that defendant owned the disputed area but allowed plaintiffs to park vehicles on the land in exchange for keeping the grass cut. Officer Mason also spoke to a representative of defendant, who indicated an interest in taking the property back. On July 4, 2021, defendant hired one of plaintiffs' neighbors to remove the old fence and put a new fence closer to the property line. According to Tiffany, defendant "didn't like that [the neighbor] had put the fence up initially straight, whereas, the property line . . . is kind of at an angle, and [defendant] didn't like how he had it in there, because it gave [plaintiffs] a little bit too extra on the backside of [the fence], so [defendant] . . . had [the fence] removed and then cemented

-2-

in place." Additionally, defendant destroyed plaintiffs' shed and removed the items that plaintiffs were storing in the shed.

Plaintiffs subsequently initiated the underlying action to quiet title to the disputed area. Specifically, plaintiffs claimed ownership over the disputed area under a theory of acquiescence or adverse possession (Counts I and II), and presented a separate claim contending that defendant trespassed by destroying plaintiffs' shed (Count III).

Defendant moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact), arguing, in relevant part, that plaintiffs failed to establish an ownership interest in the disputed area of the property under a theory of adverse possession or acquiescence because they knew that the disputed area belonged to defendant's predecessors in interest, and later to defendant. Defendant also argued that plaintiffs failed to demonstrate that defendant trespassed on the property by destroying plaintiffs' shed. Plaintiffs also moved for summary disposition under MCR 2.116(C)(10), arguing that they had an ownership interest in the property under a theory of acquiescence because the parties' predecessors in interest and plaintiffs treated the fence as the property line between the two properties for over 29 years, well over the 15 years necessary to prove a claim for acquiescence, MCL 600.5801(4).

In June 2022, the trial court heard argument on the parties' motions for summary disposition. Defendant argued, in relevant part, that plaintiffs' predecessors in interest did not acquire the disputed area by acquiescence because plaintiffs' predecessors in interest used the disputed area pursuant to an oral contract. In response, plaintiffs argued that their predecessors in interest acquired the disputed area by acquiescence because, regardless of hostility and permissive use, the parties' predecessors in interest treated the fence as the property line between the two properties for more than the statutory period of 15 years.

In September 2022, the trial court granted defendant's motion summary disposition and denied plaintiffs' motion for summary disposition. Specifically, the trial court reasoned:

> A fence of sorts existed on [] Sahers' commercial parcel for many years before it was taken down and moved to the actual property line. The moving of the fence, though within Sah[e]rs' commercial parcel, was at the expense of the Fields. The Fields filed the current action in equity to quiet title alleging that the doctrine of acquiescence mandates that they are the true owners of the thirty-foot wide disputed area.

> To complicate matters, Sahers petitioned the City of Kentwood in 2013 to rezone the entire parcel commercial in order to expand the business. This resulted in a full study of the property and at least two public hearings. Mr. [Steven] Fields attended at least one of those hearings. The fence and the actual property line was fully and completely described in the hearings and in the final documents. During the hearing, although Mr. Fields asked a question, he never informed the planning commission of the dispute over the property being rezoned. This raises the issue of equitable estoppel.

\* \* \*

-3-

To complicate matters, the City of Kentwood, unaware of the coming property line dispute, relied on the accurate survey line when it granted the request to rezone the property from residential to commercial in 2013.

These undisputed proceedings in 2013 defeat plaintiffs' claims. In those proceedings, Sahers requested and obtained a change in the zoning of the disputed area from residential to commercial. It is also undisputed that Mr. Dyhouse, the then owner and occupant of the Daniel Street parcel in 2013, had notice of and even participated in those proceedings without raising any objection or making any mention of the current dispute. The Kentwood proceedings establish that in 2013, Sah[e]rs had in no manner "acquiesced" to changing the parcel's boundary line. Sah[e]rs requested the zoning change to benefit its commercial use of the original parcel. This illustrates the absence of any agreement, overt or tacit, upon a new boundary. Further, the fact that the Kentwood proceedings occurred in 2013 cuts off any argument that the 15 year period for either adverse possession or acquiescence can be proven.

Accordingly, the trial court found that plaintiffs' claim to the disputed area was barred by the doctrine of equitable estoppel, and that defendant was entitled to summary disposition. Plaintiffs now appeal to this Court.

## II. ANALYSIS

Plaintiffs argue that the trial court erred by concluding that they did not have a viable quiet-title claim where the parties' predecessors in interest and plaintiffs treated the fence as the property line between the Division Street and Daniel Street properties for more than 15 years. We agree.

## A. STANDARD OF REVIEW

"Actions to quiet title are equitable in nature; this Court reviews such actions de novo." *Sackett v Atyeo*, 217 Mich App 676, 680; 552 NW2d 536 (1996). Additionally, to the extent that this case concerns the doctrine of equitable estoppel, whether estoppel bars a subsequent action or claim is reviewed by this Court de novo. *McMichael v McMichael*, 217 Mich App 723, 726; 552 NW2d 688 (1996). This Court also reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim.[1] *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When a motion is brought under MCR 2.116(C)(10), this Court must "review the pleadings, affidavits, and other documentary evidence submitted, make all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists, giving the nonmoving party the benefit of reasonable doubt." *Wheeler v Shelby Charter Twp*, 265 Mich App 657, 663; 697 NW2d

---

[1] Although it is unclear whether the trial court granted defendant's motion for summary disposition under MCR 2.116(C)(8) or (C)(10), we treat it as granted under (C)(10) because the trial court clearly considered evidence outside the pleadings in making its ruling. See MCR 2.116(C)(10); *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017).

180 (2005). The motion may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted).

## B. DEFENDANT'S ARGUMENTS

As an initial matter, we note that defendant argues on appeal that plaintiffs cannot prove they have an interest in the disputed area of the property under a theory of adverse possession. Defendant also argues that plaintiffs are equitably estopped from making their claim to the disputed property. Plaintiffs have not raised either of these issues on appeal, and defendant has not brought them to this Court's attention in a cross-appeal. However, an appellee need not file a cross-appeal to argue an alternative basis for affirming a trial court's ruling. See *Pegasus Wind, LLC v Tuscola Co*, 340 Mich App 715, 753, 988 NW2d 17 (2022). Thus, we will address the merits of defendant's issues.

## 1. ADVERSE POSSESSION

"A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018) (citations omitted). The statutory period is 15 years. MCL 600.5801(4). "Clear and cogent evidence" has been described by this Court as "more than a preponderance of the evidence, approaching the level of proof beyond a reasonable doubt." *Walters v Snyder*, 225 Mich App 219, 223; 570 NW2d 301 (1997). "When the elements of adverse possession have been met, the law presumes that the true owner, by his acquiescence, has granted the land, or interest to the land, so held adversely." *Marlette Auto Wash, LLC*, 501 Mich at 202 (quotation marks and citation omitted). "[H]ostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Houston v Mint Group, LLC*, 335 Mich App 545, 559; 968 NW2d 9 (2021) (quotation marks and citation omitted). "Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained. Hostility is the very essence of adverse possession." *King v Battle Creek Box Co*, 235 Mich 24, 35; 209 NW 133 (1926).

We agree with defendant that plaintiffs cannot establish a claim for adverse possession. George and Mary Dyhouse, plaintiffs' predecessors in interest, purchased the Daniel Street property in 1992. The parties do not dispute that the fence at issue was already in place in 1992, and that the Dyhouses exclusively used and maintained the disputed area from 1992 until the fence was torn down by defendant in 2021. The 15-year statutory period for demonstrating an ownership interest in the property via adverse possession would have been met in 2007. However, plaintiffs have not presented evidence to show that their use of the disputed area was truly "hostile" for purposes of showing adverse possession. According to the police report filed on October 8, 2020, Tiffany told Officer Mason that "the property actually belongs to the gas station next door, but [plaintiffs] have permission to use it as long as they cut the grass. [T]his has gone on for 30 years per the house owner." Plaintiffs do not dispute that for the 30 years that the fence was in place, they had permission from the owner of the Division Street property to use the disputed area, in

exchange for maintaining the lawn. Moreover, at the 2013 zoning meeting, George and Steven Dyhouse appeared and asked questions about whether defendant planned to move the fence, to which a representative from defendant's construction firm responded "that legally [defendant] could move the fence further back, but [defendant] plan[ned] to leave [the fence] where it [was] currently located." This indicates defendant was aware that the Dyhouses were using the disputed area even though it did not belong to them, but was content to permit them to continue to do so at that time.

"In the adverse-possession context, 'hostility' refers to use of property *without permission* and in a manner that is inconsistent with the rights of the true owner." *Jonkers v Summit Twp*, 278 Mich App 263, 273; 747 NW2d 901 (2008), citing *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006) (emphasis added). The record lacks any evidence that plaintiffs or their predecessors in interest used the property without permission for the statutory 15-year period necessary to establish an interest in the property on the basis of adverse possession. Moreover, the evidence establishes that plaintiffs' predecessors in interest, and plaintiffs themselves, recognized that defendant, and defendant's predecessor in interest, held superior title to the disputed property from 1992 until 2021. This evidence wholly defeats any claim to the land under a theory of adverse possession. See *Smith v Feneley*, 240 Mich 439, 441; 215 NW 353 (1927) (stating that recognizing someone else holds superior title to a parcel of property "destroys the adverse character of possession.").

## 2. EQUITABLE ESTOPPEL

As noted above, defendant alternatively argues that plaintiffs were equitably estopped from claiming ownership over the disputed area because plaintiffs knew that it belonged to defendant and did not contest defendant's application to rezone the property in 2013. We disagree.

Here, the trial court unilaterally concluded that plaintiffs were equitably estopped from laying claim to the disputed area of the property. It explained that this was so because the Kentwood Planning Commission relied on the accurate property line when rezoning the property in 2013, and noted that defendant never acquiesced to a new boundary line at that time.[2] Defendant reiterates this argument in a single paragraph in its appellate brief. Such a brief and unsupported argument would ordinarily be insufficient to warrant appellate review. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute."). However, because equitable estoppel was central to the trial court's ruling and the pertinent facts are available to us, we will overlook the aforementioned principle and consider defendant's argument. See *Nuculovic v Hill*, 287 Mich App 58, 63; 783 NW2d 124 (2010) ("This Court may overlook preservation requirements if the failure to consider the issue would result in

---

[2] We note that the trial court did not cite or discuss the elements of equitable estoppel, and in many ways, it appears that the trial court may have confused the principles relevant to equitable estoppel and acquiescence claims. Neither party asked the trial court to clarify its ruling. We have attempted here to faithfully interpret the trial court's reasoning.

manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented").

Equitable estoppel is not itself a cause of action. *American Federation of State, Co & Muni Employees v Bank One, NA*, 267 Mich App 281, 292-293 n 3; 705 NW2d 355 (2005). Instead, it "is merely a defense to be applied only when a party justifiably relies and acts on the belief that misrepresented facts are true." *Id*. A claim for equitable estoppel arises when "(1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." *Cook v Grand River Hydroelectric Power Co, Inc*, 131 Mich App 821, 828; 346 NW2d 881 (1984). For equitable estoppel to apply in this instance, defendant must therefore establish that (1) plaintiffs' acts or representations induced defendant to believe that plaintiff would not enforce the fence as the property line between the two properties, (2) defendant justifiably relied on that belief, and (3) defendant was prejudiced as a result of relying on that belief.

The record does not support defendant's claim. At all times relevant to this appeal, plaintiffs and defendant agreed that the fence marked the de facto boundary between the properties, even though the legal boundary was 36 feet away from the fence. The parties also agreed that plaintiffs would be able to continue using the disputed area next to the fence, provided that they mowed the lawn and kept the area in good repair. If a party wishes to establish a claim of equitable estoppel, they must show that they were "not only destitute of knowledge of the state of the facts, but . . . destitute of any convenient and available means of acquiring such knowledge[.]" *Rix v O'Neil*, 366 Mich 35, 42; 113 NW2d 884 (1962) (quotation marks and citation omitted). However, "where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." *Id*. Such is the case here: the parties agreed that the fence marked the boundary line of the property, defendant did not depend on on any assurances made by plaintiff regarding the disputed area, and defendant cannot show prejudice as a result of reliance on such assurances. Thus, defendant cannot now raise the equitable estoppel doctrine to defeat plaintiff's claim to the disputed area.[3] We now turn to plaintiffs' claim on appeal.

## C. ACQUIESCENCE

Plaintiffs argue that they have an interest in the disputed property under a theory of acquiescence. We agree.

"Under Michigan law, parties may acquiesce to a new property boundary line." *Houston*, 335 Mich App at 567. "[A]cquiescence is established when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line." *Id*. (quotation

---

[3] Defendants also argue that 1) plaintiffs cannot prove their claim that defendant trespassed on the land; 2) plaintiffs' citations to unpublished caselaw are inapplicable, and 3) defendant's documentary evidence does not constitute hearsay. Unlike defendant's adverse possession and equitable estoppel arguments, which are clearly presented as alternate grounds for affirmance, these three issues have not been presented as alternative grounds for affirmance. Accordingly, we decline to address them on the merits.

marks and citation omitted). A plaintiff in an action to quiet title bears the initial burden of establishing a prima facie case of title to the property in question. *Trademark Props of Mich, LLC v Fannie Mae*, 308 Mich App 132, 138; 863 NW2d 344 (2014). The plaintiff must be able to "prove acquiescence by a preponderance of the evidence." *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001).

There are three main methods for showing acquiescence: "(1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary." *Houston*, 335 Mich App at 567 (quotation marks and citation omitted). Here, the parties' arguments generally concern the first theory of acquiescence. Statutory acquiescence is met "when a preponderance of the evidence establishes that the parties treated a particular boundary line as the property line" for the 15-year period required by statute. *Id*. at 567-568 (quotation marks and citation omitted); see also MCL 600.5801(4). "The acquiescence of predecessors in title can be tacked onto that of the parties to establish the mandated period of fifteen years," *Id*. at 568 (quotation marks and citation omitted). "Proof of privity is not necessary, however, to employ tacking of holdings to obtain the 15-year minimum under the doctrine of acquiescence." *Siegel v Renkiewicz Estate*, 373 Mich 421, 426; 129 NW2d 876 (1964).

Additionally, "[u]nlike adverse possession, a claim of acquiescence does not require that possession of the land was hostile or without permission." *Houston*, 335 Mich App at 568. Instead, the proper inquiry is whether the property owners "*treated* a particular boundary as the property line." *Walters v Snyder*, 239 Mich App 453, 458; 608 NW2d 97 (2000). "Only when there has been some agreement, whether tacit or overt, as to the location of the boundary does the question of acquiescence become important." *Wood v Denton*, 53 Mich App 435, 439-440; 219 NW2d 798 (1974). In cases involving a boundary marked by a fence, our Supreme Court has opined that "[w]here a fence has been treated and acquiesced in as the correct boundary line between adjacent owners for 15 years the boundary line ought not to be disturbed even if there were some variance from the true line . . . ." *Escher v Bender*, 338 Mich 1, 5; 61 NW2d 143 (1953) (quotation marks and citation omitted). A boundary line long acquiesced to and treated as the true line should not be disturbed on the basis of new surveys. *Johnson v Squires*, 344 Mich 687, 692; 75 NW2d 45 (1956); *Escher*, 338 Mich at 5-6.

In the trial court, plaintiffs submitted documentary evidence demonstrating use of the disputed area by plaintiffs' predecessors in interest and by plaintiffs. Plaintiffs attested that they and their predecessors in interest exclusively occupied and used the disputed area following the purchase of the property in 1992, until defendant destroyed the fence in 2021. Tiffany explained that plaintiffs' predecessors in interest and plaintiffs mowed, watered, and seeded the disputed area; planted flowers and shrubs in the disputed area; hosted parties and entertained guests in the disputed area; held yard sales in the disputed area; and parked and repaired vehicles in the disputed area. Tiffany also testified that plaintiffs' predecessors in interest and plaintiffs treated the fence as the property line between the two properties, and asserted that nobody ever objected to the location of the fence or the family's use of the disputed area. Dennis agreed that the parties' predecessors in interest treated the fence as the property line between the two properties. Additionally, plaintiffs submitted numerous photographs depicting use of the disputed area by plaintiffs' predecessors in interest throughout the years. These photos provide clear proof that plaintiffs' predecessors in interest and plaintiffs exclusively used the disputed area for various

purposes, including recreation and storage, and were solely responsible for maintaining the area for nearly 30 years, split between the years that the Dyhouses owned the property and the years that plaintiffs have owned the property. Plaintiffs also asserted that a family friend and a neighbor could both testify about plaintiffs' predecessors in interest and plaintiffs' exclusive and personal use of the disputed area.

In response, defendants submitted documentary evidence indicating that plaintiffs and their predecessors in interest used the disputed area pursuant to an oral contract initially made with defendant's predecessors in interest. Specifically, defendant's predecessors in interest allowed plaintiffs' predecessors in interest and plaintiffs to use the disputed area as long as the disputed area's lawn was maintained. In addition, defendants submitted documentary evidence establishing that plaintiffs' predecessors in interest and plaintiffs knew that the fence was not the legal property line and that the disputed area belonged to defendant's predecessors in interest and defendant. Essentially, defendant contends that plaintiffs' predecessors in interest and plaintiffs' knowledge that the fence was not the legal property line, as well as their permissive use of the disputed area, defeated any claim of acquiescence that plaintiffs may have had to the disputed area.

However, while such knowledge may have defeated plaintiffs' claim under a theory of adverse possession, plaintiffs nevertheless presented ample evidence to support their claim to the property under a theory of acquiescence. Plaintiffs' knowledge that the fence was not the legal property line, and their permissive use of the disputed area, does not negate the fact that for 29 years—almost twice the 15-year statutory period necessary to prove a claim of acquiescence—the parties' predecessors in interest and plaintiffs *treated* the fence as the property line between the two properties and *treated* the disputed area as part of plaintiffs' property. See *Walters*, 239 Mich App at 458; *Houston*, 335 Mich App at 569-570 (evidence of the treatment of a retaining wall as the boundary line between the respective properties was demonstrated by the predecessors' maintaining of a garden up to the side of the wall).

Defendant has proffered no documentary evidence to counter the evidence presented by plaintiffs, which clearly shows that the disputed area had been occupied, maintained, and used by plaintiffs and their predecessors in interest since 1992. Further, defendant's evidence did not contradict plaintiffs' claim that the parties' predecessors in interest and plaintiffs treated the fence as the property line between the two properties for over 15 years. As a result, defendant has failed to show a genuine issue of material fact regarding acquiescence. Accordingly, plaintiffs are entitled to summary disposition, and the trial court's order granting defendant summary disposition under MCR 2.116(C)(10) must be reversed.

## III. CONCLUSION

The trial court erred by granting summary disposition to defendant under MCR 2.116(C)(10). We reverse and remand for entry of an order granting plaintiffs' summary disposition under MCR 2.116(C)(10) as to their claim of acquiescence. On remand, the trial court must consider plaintiffs' separate claim that defendant trespassed on the land. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates