## DUDLEY *v.* RAPANOS,

1. CONTRACTS—CONSTRUCTION.

   An ambiguous instrument must be construed strongly against the party drafting it.

2. SAME—CONSTRUCTION—AMBIGUITY.

   The failure to strike all of a clause on a printed form when drafting a lease, thereby rendering the instrument ambiguous, will result in a construction most strongly against the defendant lessee who drafted the lease.

3. SAME—ORAL EVIDENCE TO EXPLAIN AMBIGUITY—LEASE ON PRINTED FORM.

   Oral testimony may be introduced to explain whether or not it was the intention of the parties involved in lease to strike a provision relative to written consent of the lessor to the assignment of the lease by the lessee, where there were marks through some words at the beginning and end of the questioned clause but not all the way through it.

4. LANDLORD AND TENANT—CONSENT TO ASSIGNMENT OF LEASE— CONSTRUCTION OF LEASE—FINDING OF TRIAL COURT—EVIDENCE.

   Trial judge's finding in suit for declaration of rights that provision of printed form of lease requiring landlord's consent to assignment of lease by the lessee had not been stricken therefrom before execution. of the lease is not disturbed on appeal from decree for plaintiffs, since the trial court heard the witnesses present conflicting testimony, observed their demeanor and was in the best position to determine their credibility and to conclude what the facts in the case really were.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 12 Am Jur, Contracts § 252.
[3] 12 Am Jur, Contracts §§ 65, 233.
[4] 3 Am Jur, Appeal and Error §§ 895, 896.
[5] 3 Am Jur, Appeal and Error § 912.

5. Appeal and Error—Chancery Cases—Hearing De Novo—Witnesses—Credibility.

> The Supreme Court hears chancery cases *de novo* and will not ordinarily reverse the lower court, where there is evidence and testimony to support the finding of the lower court unless justice demands it, or it can be said that the evidence clearly preponderates the other way, since the trial court is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted April 15, 1958. (Docket No. 70, Calendar No. 47,261.) Decided July 15, 1958.

Bill by Cecil Dudley and Ruth Dudley against John A. Rapanos to determine right to forfeiture of lease. Decree for plaintiffs. Defendant appeals. Affirmed.

*James R. Golden,* for plaintiffs.

*Ryan, Sullivan & Hamilton (James M. Sullivan,* of counsel), for defendant.

Kavanagh, J. Plaintiffs filed a bill of complaint in the circuit court for Calhoun county on April 4, 1956, praying for a declaratory decree. An amended bill of complaint was filed on June 13, 1956, alleging that on April 8, 1956, the defendant leased or sublet the premises covered by the lease to another person or persons in violation of the terms of said lease without obtaining the written assent of plaintiffs as provided for in the lease, and that by reason of said violation, said lease is no longer binding upon the plaintiffs.

Defendant filed his answer to the amended bill of complaint on July 18, 1956, in which he admits that he sold his business and sublet the premises to a third party, but avers that said sale and subletting

of the premises was not in violation of the terms of the lease. He further avers that the lease does not contain a clause requiring the written assent of plaintiffs to said assignment or subletting, and that said clause contained in the printed form upon which the lease was prepared was deleted by striking through certain portions of the printed clause and by not filling in the pronouns in the blank spaces, and that it was the intention of the parties that said clause be stricken and eliminated.

The facts concerning the leasing of the property are that plaintiffs, Cecil Dudley and Ruth Dudley, had constructed a drive-in refreshment stand on the lot in front of their home, where they sold ice cream and soft drinks, et cetera. In the spring of 1955 they advertised said drive-in stand for lease. The defendant, John A. Rapanos, answered their advertisement, and they discussed leasing the property. They were to meet the following week for a final determination as to a lease. The following Saturday the defendant came from Ann Arbor and he and the plaintiffs talked over the terms of the lease. An attempt was made to contact an attorney to draft the final lease of the premises. Since it was Saturday afternoon the parties were unable to obtain an attorney who would draft the lease for them. It is admitted that the defendant prepared and typed the lease upon a printed form. There is a dispute as to whether defendant informed the plaintiffs that an attorney had drafted the lease. There is no dispute about the fact that defendant left plaintiffs' premises late that afternoon and returned with a prepared and typed lease upon a printed form.

A friend of defendant, George Mantas, was with defendant at the home of plaintiffs later that evening when defendant and Cecil Dudley went over the lease together, and in a number of places the defendant made changes therein with pen, some admittedly

at the direction of plaintiff Cecil Dudley and some at the direction of the defendant. Eventually that evening the lease was executed.

Defendant took possession under the lease, renovated the premises, and made some substantial improvements thereon at considerable expense to himself. In April, 1956, defendant sold the business to Mr. and Mrs. Bocoske, without the written assent of the plaintiffs, and in this fashion was raised the real question in controversy in this suit.

Does the lease, as executed, require the written assent of the plaintiffs to any assignment or subletting therefor?

At the hearing plaintiffs established the execution of the lease which contained the usual clause, providing that assignment, transfer, or subletting of the premises could not be made without the written assent of the first party. However, the first and last parts of the clause had diagonal marks drawn through the words "Said part      of the" and the last 4 words "of the first part," leaving the clause to read as follows:

"second part further covenant that      will not assign nor transfer this lease, or sub-let said premises, or any part thereof, without the written assent of said part     ."

The defendant contended that the diagonal marks at the beginning and end of said clause constituted a cancellation of said clause, and that it was the intention of the parties to the lease that such diagonal marks constituted a cancellation of the entire clause.

Defendant testified that said clause was discussed at the time of the signing of the lease, and that plaintiff Cecil Dudley understood and consented that the same be stricken from the lease, and also agreed that the diagonal marks at the beginning and end of said clause cancelled the clause. Defendant's

friend, George Mantas, testified to the same effect. Plaintiffs testified that said clause and the diagonal marks were not discussed, and it was not the intention of plaintiffs that said clause should be stricken from the lease.

The trial court found as a matter of fact that said clause, as it now stands in the lease, is intelligible and provides that the second party is not to assign or sublet the premises without the consent of the parties; that the defendant failed to establish that the diagonal marks at the beginning and ending of the clause were intended by the parties as a cancellation of said clause; and that the defendant did breach said lease by assigning and subletting the premises.

Defendant raises 4 questions on appeal:

"1. Do plaintiffs have a burden of proof of the existence of a clause prohibiting assignment by lessee without lessors' written consent?

"2. In a lease partly printed, partly typewritten, should the typewriting prevail over the printing?

"3. Did the lease contain a clause prohibiting assignment by lessee without lessors' written consent?

"4. Are plaintiffs entitled to have the lease decreed forfeited?"

With reference to the defendant's position regarding the burden of proof and the circuit judge's ruling with respect to it, it would appear that the plaintiffs in this action proceeded with the burden of proof and, through the testimony of the lessors, established a prima facie case, indicating that it was not the intention of the parties to have the clause prohibiting assignment by the lessee stricken from the instrument. When this prima facie case was rebutted by the testimony of defendant and his witness, plaintiff carried forward the burden of proof. It would appear that the remark of the court that the burden of proof was on defendant can be safely dis-

regarded. Clearly the crux of this case has to do with the trial judge's apparent belief of the testimony of plaintiffs' witnesses in preference to defendant's. Add this fact to the proposition of law that an instrument must be construed most strongly against the party drafting it and you find the position presented to this Court. Admittedly, defendant drafted the lease in question. If his failure to strike all of the clause presented an ambiguous instrument, then, oral testimony could be entered to explain such ambiguity and to explain whether or not it was the intent of the parties, by the insertion of diagonal bars, to strike out the whole clause. Failure to strike all of the clause must be construed most strongly against defendant who drafted the instrument. *Wetmore* v. *Pattison,* 45 Mich 439; *Ardis* v. *Grand Rapids & Indiana R. Co.,* 200 Mich 400; *Brown* v. *A. F. Bartlett & Co.,* 201 Mich 268; *Higbie* v. *Chase,* 306 Mich 577.

We cannot say, on examination of the entire record, that, had we been in the position of the trial judge, we would have found otherwise than he did with respect to the conflicting claims of the parties concerning whether there was discussion of the cancellation of the clause prior to the execution of the same. The trial judge heard the witnesses, observed their demeanor, and was in the best position to determine their credibility and to conclude what the facts in the case really were. Although this Court on appeal hears chancery cases *de novo,* it ordinarily will not reverse the lower court where there is evidence and testimony to support the finding of the lower court unless justice demands it, or it can be said that the evidence clearly preponderates the other way, the trial judge being in a better position to test the credibility of the witnesses by observing them in court and hearing them testify. *Grace Har-*

*bor Lumber Co.* v. *Ortman,* 190 Mich 429; *Van Allen* v. *Sprague,* 206 Mich 116; *Higbie* v. *Chase,* 306 Mich 577; *Bennett* v. *Bennett,* 336 Mich 133. Nothing in the record of this case persuades us that the trial court erred.

Decree affirmed. Costs to plaintiffs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.