AMERICANADA TELEFERRY CO v DETROIT

CONTRACTS — ABANDONMENT — BREACH — QUESTION OF FACT — SUMMARY JUDGMENT.

> A letter sent by plaintiffs to the Detroit Civic Center Commission in which plaintiffs offered to relinquish control of their company, set up to develop an aerial cable tramway system connecting Detroit and Windsor, Canada, because financial inability to proceed did not, as a matter of law, constitute an abandonment or breach of their original contract with the City of Detroit in which plaintiffs had leased city-owned land for the proposed teleferry project, but presented questions of fact which could not be resolved by summary judgment.

Appeal from Wayne, Charles S. Farmer, J. Submitted Division 1 December 8, 1971, at Detroit. (Docket No. 10584.) Decided February 23, 1972.

Complaint by AmeriCanada TeleFerry Company and Detroit-Windsor Teleferry, Ltd., against the City of Detroit for mandamus, specific performance and money damages arising from defendant's failure

---

REFERENCE FOR POINTS IN HEADNOTE

17 Am Jur 2d, Contracts § 484.

to have a lease prepared. Summary judgment for defendant. Reversed and remanded with instructions.

*Alspector, Sosin, Mittenthal & Barson,* for plaintiffs.

*Michael M. Glusac,* Corporation Counsel, and *John E. Cross* and *Maureen P. Reilly,* Assistants Corporation Counsel, for defendant.

Before: LESINSKI, C. J., and LEVIN and O'HARA,* JJ.

O'HARA, J. This is an appeal from a summary judgment entered in favor of defendant city. Plaintiffs appeal of right.

The issues pleaded, the defenses raised, the motions made, the affidavits filed in opposition and support thereof, and the admixture of alleged conflict between the legislative and executive branches of defendant city suggests a controversy of great complexity.

As we view it, on appeal at least, the issue is extremely limited. Though appellants assign eight claims of error, we think in the composite they amount to two.

(1) On the basis of the complaint, the answer, the exhibits and motions, and the affidavits *pro* and *contra,* was summary judgment properly granted?

(2) Did plaintiff Detroit-Windsor Teleferry, Ltd., have standing as a party plaintiff?

This is how it all came about. In October of 1956 plaintiff AmeriCanada TeleFerry Company, a Dela-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ware corporation and defendant city, a municipal corporation, executed a document which is entitled "Lease". It contains an impressive number of signatures; the Controller of defendant city, the Director of the Civic Center Commission (a sort of offshoot of the municipal corporation exercising some measure of control over real estate owned by the city, but subject to continuing control by the common council), the president of plaintiff corporation, AmeriCanada, and the city clerk as the executing amanuensis of the Detroit Common Council.

That it binds both parties there can be no doubt. What, if anything, it binds them to is another matter. The city, by its Corporation Counsel, drew the lease. Perforce, it must be construed the more strictly against the city.[1]

The instrument purports to lease to plaintiff AmeriCanada, city-owned land for a "Teleferry Building Site" and a "Pylon Site". The involved land was subject to some measure of delegated control by the Civic Center Commission. The idea was that the lessee would finance and construct an aerial high-wire ferry connecting Detroit and Windsor. During the period of construction, the contractors were to pay the city for 45 parking spaces at 50 cents per day. When construction was completed, this portion of the lease was to terminate. Thereafter, and commencing on the "operational date of the facility", the lessor was to pay a minimum annual rental of $25,000, and a sliding scale of percentages of gross revenue ranging from 12% to 35%. There were elaborate requirements for bookkeeping, turnstile counts, and audit procedures. One detail seems to have been overlooked or intentionally omitted.

---

[1] *Wolverine Upholstery Co* v *Ammerman*, 1 Mich App 235 (1965); *Dudley* v *Rapanos*, 353 Mich 237 (1958).

No date was set upon which the aerial device had to be completed.

As far as we can glean from the record, the parking lot fees were never paid. Construction however was never begun.

It cannot be gainsaid that the lessee expended time, effort and money, to be exact $162,000, in preliminary surveys and obtaining permits of one sort or another including presidential approval. As this aspect of the project went on (for four years at least), financing difficulties seemed to have been encountered. But finally, so plaintiffs claim, financing was guaranteed by Swiss financiers and the city council was approached again. After a study by the city's Auditor General, the Corporation Counsel (city attorney) was ordered to prepare an instrument that would be more specific than the one previously mentioned herein and submit it to the council.

We quote the resolution dated November 6, 1969.

"Resolved, That the Corporation Counsel be and he is hereby authorized and *directed* to prepare a lease between the City of Detroit and Americanada Teleferry Company based on the analysis of the Auditor General indicating the guidelines for said proposed negotiated lease which shall be subject to review and approval of the Common Council * * * ." (Emphasis supplied.)

It has been stipulated that for some unspecified reason, the Corporation Counsel never prepared the lease which the resolution directed him to. In obvious consequence the council never did review and approve or disapprove it. This gave rise to plaintiffs' prayer for mandamus in addition to specific performance and money damages.

While this apparent city legislative-executive stalemate continued, the lessor wrote the Civic Center Commission as follows:

"22 January 1969.
"Secretary Civic Center Commission
"1 Washington Blvd., Detroit, Michigan
"Dear Sir:
"We are the developers of the AmeriCanada Tele-Ferry, the aerial cable tramway system intended to link Detroit and Windsor across the Detroit River. We have obtained all of the necessary licenses, permits and leases from the various federal, municipal, and state governments, both in USA and Canada. For financial reason however, we cannot proceed with our project.

"We are convinced that for the next few years it will not be possible to develop the AmeriCanada TeleFerry by private capital. Our efforts, including private financing as well as public stock issue, were not successful. We feel that it can indeed be a successful venture if it is sponsored by a suitable governmental agency. We therefore would like to relinquish our control of the company to the Civic Center Commission.

"When can we present our offer in person before the Commission? All we want in return is the return of our dollar investment plus a modest finder's fee for obtaining the necessary documentation, which I repeat is 100 percent complete.

"Cordially,
"AMERICANADA TELEFERRY COMPANY
"/s/ *George H. Amber*
"George H. Amber, President."

Nothing seems to have happened in the way of a written response to this letter. On March 20, 1970, plaintiffs filed their complaints seeking, as hereinbefore noted, mandamus, specific performance and money damages.

The city countered, alleging nonperformance, lack of mutuality of obligation, abandonment, breach, unenforceability and nonliability generally.

The able trial judge applied himself diligently to the matter and favored us with a comprehensive opinion.

In substance he held:

(1) The letter of January 22 to the Civic Center Commission was in fact a confession of inability to proceed under the original contract, hence that the city was relieved of its obligations, if any, thereunder.

(2) Mandamus did not lie because no clear legal duty to perform a specific act was established and because no mutuality of obligation arose from the terms of contract and thus specific performance could not be compelled.

(3) The plaintiff, Detroit-Windsor Teleferry, Ltd of Windsor, was neither an assignee, nor a third-party beneficiary and that it had no direct contractual relationships with defendant city, and thus was without standing as a party plaintiff.

In this case, as in all summary judgment matters, our scope of review is extremely limited. It is not to our purpose whether plaintiffs could sustain their cause of action, but only whether on favorable view to them they pleaded one, and that when issue was joined a genuine issue of material fact was raised. We think there was.

To make our position clear, we must depart somewhat from the format of the trial judge's finding in order to reach a question which he did not answer explicitly. This, we think is by reason of his holding that the letter of January 22, 1969, constituted a complete abandonment by plaintiffs. Still we are troubled to some degree by the fact that the original lease contained a proviso that certain of the obligations upon plaintiff AmeriCanada would not apply until "the facility became operative". As we mentioned earlier, no time within which plaintiff had to make it operative was included. We believe

the trial judge reasoned that if the abandonment was in fact certain and unequivocal, the foregoing point became moot because if the city had any obligation under the agreement it was extinguished by the abandonment or breach or both by plaintiffs.

We cannot agree however that abandonment or breach by plaintiffs could be determined as a matter of law by summary judgment. The letter relied on concludes with this inquiry: "When can we present our offer in person before the [Civic Center] Commission?" We are unable to find any definite answer to this inquiry. We read the question together with the express resolution of the Common Council directing (as the charter of the city provides) the corporation counsel to "prepare a lease * * * indicating guidelines for said *proposed* negotiated lease which *shall* be subject to review and approval of the Common Council" to require some action or explanation for the inaction by the city. (Emphasis supplied.)

A question of fact as to just what the parties did intend was created. We are well aware that this letter was sent to the Civic Center Commission and not the city itself. But the sword of the abandonment or breach letter must surely cut both ways. If the letter, directed to the commission, was sufficient to *relieve* the city of its obligations, it must be considered under a proper finding of fact as sufficient to *continue* the city's obligation if it did not constitute abandonment. We think the whole complex relationship of the parties in this regard requires testimony to afford a basis for findings of fact. We cannot agree the issues could have been resolved as a matter of law.

Since we are compelled to vacate the summary judgment on the foregoing issue, we do not pass on any of the other questions which may be affected by

findings of fact including the claimed lack of mutuality of obligation as they might bear on the propriety of the remedy of specific performance. We mention that *Reinink* v *Van Loozenoord,* 370 Mich 121 (1963), seems to have diluted the former requirement that specific performance be available to both parties before it can be enforced as to one.

Neither do we pass upon the issue of standing of plaintiff Detroit-Windsor Teleferry, Ltd, nor the propriety of mandamus as sought by plaintiffs. These also we think involve issues of fact.

We express no view on the question of the entitlement of plaintiffs to money damages, but we do observe that the claimed letter of abandonment makes some reference to a "finder's fee" due plaintiffs. The term, as far as we can determine, is a stranger to the pleadings and to the whole record.

We consider the holding of the trial judge, that plaintiffs in addition to abandoning the project also breached certain performance requirements imposed on them, was prematurely made and should be determined in the factual context of the case as developed by testimony.

In finality, we find and hold that there are genuine issues of material fact raised by the pleadings and motions and by the affidavits in support thereof, outside and beyond the stipulation of fact.

The summary judgment is vacated. The cause is remanded to the trial court for further proceedings. Appellants may tax the costs of this Court. Costs in the court below will abide ultimate disposition of the case in chief.

All concurred.